J. Stephen Peek (NV Bar No. 1758)
Ryan A. Semerad (NV Bar No. 14615)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
speek@hollandhart.com
rasemerad@hollandhart.com

Sarah Kim Pak (CA Bar No. 324674) (*pro hac vice* pending)
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd, Suite 108 – 62
Los Angeles, CA 90010
Phone: 213.639.3900
Fax: 213.639.3911
kimpak@nilc.org

Rene Kathawala (NY Bar No. 2806651) (*pro hac vice* pending)
Deena Dulgerian (CA Bar No. 321836) (*pro hac vice* pending)
Carolina Garcia (CA Bar No. 311261) (*pro hac vice* pending)
Amanda Maya (CA Bar No. 324092) (*pro hac vice* pending)
ORRICK, HERRINGTON, & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California 94025
Phone: (650) 614-7400
Fax: (650) 614-7401
rkathawala@orrick.com
ddulgerian@orrick.com
cgarcia@orrick.com
amaya@orrick.com

*Attorneys for Plaintiff, David Adame-Reyes*

**HOLLAND & HART LLP**
**9555 HILLWOOD DRIVE, 2ND FLOOR**
**LAS VEGAS, NV 89134**

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DAVID ADAME-REYES,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH LOMBARDO, in his Individual Capacity and in his Official Capacity as Sheriff of the Las Vegas Metropolitan Police Department; LAS VEGAS METROPOLITAN POLICE DEPARTMENT,<br><br>          Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. UNLAWFUL SEIZURE UNDER 42 U.S.C. § 1983**<br><br>**2. DUE PROCESS**<br><br>**3. FALSE IMPRISONMENT**<br><br>**4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |

Plaintiff David Adame-Reyes ("Mr. Adame-Reyes" or "Plaintiff"), a longtime Las Vegas resident, brings this civil rights complaint against Clark County Sheriff Joseph Lombardo ("Sheriff Lombardo") and the Las Vegas Metropolitan Police Department ("LVMPD") (collectively "Defendants").  Mr. Adame-Reyes seeks redress for the harm he suffered as a direct result of Defendants' harmful, unlawful policy, custom, and practice of arresting and confining community members to the county jail, *without probable cause that these community members committed a criminal offense*, on the sole basis of "hold requests" from U.S. Immigration and Customs Enforcement ("ICE").  An ICE hold is an administrative request to hold an individual for a suspected *civil* immigration violation, which is not an authorized basis for arrest in Nevada.  An ICE hold does *not mandate* detention and *provides no legal authority to detain* an individual.  Yet, Defendants Clark County Sheriff Joseph Lombardo and the Las Vegas Metropolitan Police Department have *twice* detained Mr. Adame-Reyes without legal authority, after he was due to be released from their custody, for suspected civil immigration issues.  The extrajudicial arrests and detentions of Mr. Adame-Reyes without probable cause that he committed a criminal offense and on the sole basis of an ICE hold, pursuant to and in accordance with Defendants' policy, custom, and practice, violated the United States Constitution and Nevada law.  Defendants' unconstitutional actions, and the actions of those working under the direction of their policy and custom, have subjected Mr. Adame-Reyes and many others in the community to serious and enduring harms.

## INTRODUCTION

1.    Mr. Adame-Reyes brings this civil rights complaint against Sheriff Lombardo, in his personal and official capacities, and the LVMPD.  This action is based on Defendants' policy, custom, and practice of granting "hold requests" from ICE officials (referred to herein as "ICE holds," but also known as "immigration holds," "ICE hold requests," "ICE detainers," or "immigration detainers") and detaining those subject to them in the Clark County Detention Center ("CCDC") beyond the time when the law required they be released.

2.    An ICE hold does not provide probable cause or even reasonable suspicion that an individual has committed a criminal offense, and it thus provides no legal authority to arrest and

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

detain a person. Jailing individuals on the basis of an ICE hold alone represents a voluntary decision that violates the U.S. Constitution and Nevada law. Defendants' policy, custom, and practice subjected Mr. Adame-Reyes—and countless other community members—to arrest and detention in violation of federal and state law and thereby caused Mr. Adame-Reyes significant harms, including the deprivation of his liberty and due process, false imprisonment, and emotional distress.

3.    The unlawful arrest and detention of Mr. Adame-Reyes, carried out pursuant to and in accordance with Defendants' stated policy, custom, and practice of jailing individuals like him solely on the basis of ICE hold requests, was unconstitutional. The harms Defendants inflicted on Mr. Adame-Reyes, other individuals subjected to unlawful arrest and detention, their families, and the larger community have been grave and lasting. Detention for even a relatively brief period can cause an individual to lose a job, leave a family without its breadwinner, and leave children without a parent and at risk of suffering lasting trauma. It removes active and contributing community members from the community. The due process protections afforded by our judicial systems deteriorate in the face of these unauthorized arrests as detention makes it harder for Mr. Adame-Reyes and similarly situated individuals to defend themselves and present their own meritorious claims, whether in the context of criminal or immigration cases.

4.    Defendants' policy, custom, and practice of carrying out arrests and detention on the sole basis of ICE holds, in Mr. Adame-Reyes's case and for so many others, has had ripple effects far beyond those who have themselves suffered the arrests and detention, which, as indicated on the face of the ICE hold, could last for days. The entanglement of local law enforcement agencies in civil immigration enforcement is widely regarded as undermining trust in local law enforcement officers, deterring the reporting of crimes, and inhibiting witnesses from coming forward. Of particular import, immigrant survivors of violence become less likely to seek police protection for fear of what may happen to them or to loved ones. In one recent survey of hundreds of victims' advocates and attorneys across 42 states, one U.S. territory, and the District

of Columbia, 76.25% reported that immigrant survivors are fearful of contacting the police.[1]  In a number of localities where authorities are, or are perceived to be, collaborating with federal immigration authorities, there have, for example, been significant declines in reporting by Latina women of rape and domestic violence.[2]

5.      Collaboration between local law enforcement and immigration authorities, such as through the granting of ICE holds, wastes scarce resources and causes economic and other harm to the local community.  Such collaboration efforts have been associated with racial profiling and heightened concerns about police arresting Latinx individuals for pretextual reasons.[3]  Records show that between 2017 and 2018, in connection with immigration enforcement efforts, Las Vegas law enforcement officials took hundreds of Latinx individuals into custody for low-level offenses like jaywalking or driving with a broken taillight.[4]

6.      Mr. Adame-Reyes's experience follows a similar pattern.  Defendants arrested Mr. Adame-Reyes on August 21, 2018, on suspicion of his committing a minor criminal offense.  Local authorities dismissed the charges against Mr. Adame-Reyes shortly after his arrest.  And, Mr.

_____

[1] Tahirih Justice Center, *Immigrant Survivors Fear Reporting Violence* (May 2019), *available at* https://www.tahirih.org/wp-content/uploads/2019/06/2019-Advocate-Survey-Final.pdf; *see also, e.g.,* Tahirih Justice Center, *Survey of Advocates Reveals Immigrant Survivors Fear Reporting Violence* (Jun. 4, 2019), *available at* https://www.tahirih.org/news/survey-of-advocates-reveals-immigrant-survivors-fear-reporting-violence/; Nik Theodore, *Insecure Communities: Latino Perceptions of Police Involvement in Immigration Enforcement* (May 2013), *available at* https://www.policylink.org/sites/default/files/INSECURE_COMMUNITIES_REPORT_FINAL.PDF ("More than four in ten [Latinxs] say that because police are more involved in enforcing immigration laws they have become less likely to volunteer information about crimes because they fear getting caught in the web of immigration enforcement.").

[2] *See, e.g.*, American Immigration Council et al., *Assumption of Risk: Legal Liabilities for Local Governments that Choose to Enforce Federal Immigration Laws* (Mar. 2018), *available at* https://www.immigrantjustice.org/sites/default/files/content-type/research-item/documents/2018-03/Assumption_of_Risk_March2018_FINAL.pdf; *see also* Tom K. Wong, "Sanctuary cities don't 'breed crime'. They encourage people to report crime.," WASH. POST (Apr. 4, 2018), *available at* https://www.washingtonpost.com/news/monkey-cage/wp/2018/04/24/sanctuary-cities-dont-breed-crime-they-encourage-people-to-report-crime/ (providing statistic evidence of the chilling effect of having local law enforcement agencies do the work of federal immigration authorities).

[3] *See, e.g.*, Edgar Aguilasocho et al., *Misplaced Priorities* 17 (Jan. 2012), *available at* https://www.law.uci.edu/academics/real-lifelearning/clinics/MisplacedPriorities_aguilasocho-rodwin-ashar.pdf.

[4] *See* NDLON & Arriba Las Vegas Worker Center, News Release, "Newly Released Records Show City of Las Vegas Spent Over Two Hundred Thousand Dollars to Help ICE Deport Community Members" (Mar. 28, 2019), *available at* http://arribalasvegas.org/city-of-las-vegas-spent-over-200k-to-help-ice-deport-community-members/.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

4

Adame-Reyes was advised almost immediately after his transport to CCDC that he would be released on his own recognizance.

7.    Despite this same-day order of release, Defendants incarcerated him overnight solely on the basis of an ICE hold after Mr. Adame-Reyes was questioned about his immigration status.  Afterward, Defendants handed him over to ICE, an agency within the Department of Homeland Security ("DHS"), which led to his detention for approximately four months.

8.    On August 17, 2019, Defendants arrested Mr. Adame-Reyes again on suspicion of committing a criminal offense.  While the charges against Mr. Adame-Reyes were once again dismissed, Defendants continued to detain him in order to question him about his immigration status and allow ICE to take custody of him.  Mr. Adame-Reyes has been in federal custody ever since.

9.    An ICE hold provides no legal authority for Defendants and their officers to detain Mr. Adame-Reyes or anyone else who has been subjected to Defendants' voluntary decision to arrest and detain on the basis of an ICE hold request.  Detention on the sole basis of an ICE hold constitutes a new "arrest" under federal and state law.  The Fourth Amendment and Article 1, Section 18 of the Nevada Constitution require that every arrest be justified by the issuance of a warrant by a neutral judge based on a finding of probable cause or, in the case of a warrantless arrest, that the arrest be supported by probable cause and be reviewed by a neutral judge within 48 hours of arrest.  An ICE hold meets none of these requirements.  It does not support a finding of probable cause that a criminal infraction has occurred, and a judge conducts no review of an ICE hold – not before and not after Defendants have made the decision to detain an individual on the basis of an ICE hold.

10.    Defendants' ICE holds policy evinced a deliberate indifference to Mr. Adame-Reyes's constitutional rights and was the moving force behind the constitutional violations.  As a result of Defendants' policy and practices, despite being ordered released from criminal custody, Mr. Adame-Reyes was unlawfully re-arrested and detained without probable cause or other legal authority when Defendants honored the ICE hold placed on him.  Thus, Defendants violated Mr. Adame-Reyes's Fourth and Fourteenth Amendment rights under the U.S. Constitution.  His arrest

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

5

and detention by Defendants on the basis of an ICE hold also violated state law, which limits the arrest authority of Nevada police in non-criminal matters.

11.    More recently, after subjecting Mr. Adame-Reyes to yet another arrest and period of detention for a suspected civil immigration violation, Defendants acknowledged in a press release that "Nevada does not have a statute authorizing an arrest for civil immigration violations" – which has long been the law – and announced that LVMPD would cease honoring ICE holds. A true and correct copy of this press release, dated October 23, 2019, is attached to this complaint as **Exhibit A**. Defendants' asserted policy change decision does not redress the harm that Mr. Adame-Reyes suffered and provides little assurance that Defendants will not resume their policy and practice. Mr. Adame-Reyes thus seeks declaratory relief and damages from Defendants resulting from his unlawful seizure, the violation of his due process rights, his false imprisonment, and the harm caused by the Defendants' intentional infliction of emotional distress.

## JURISDICTION AND VENUE

12.    This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the laws of the State of Nevada. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343, and Article III of the U.S. Constitution.

13.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the claims arising under Nevada law, as they are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

14.    Venue is proper in this Court as the events and conduct complained of herein occurred in the District of Nevada.

## PARTIES

15.    Plaintiff David Adame-Reyes is a longtime resident of Las Vegas, Nevada. Mr. Adame-Reyes is a 36-year-old man with deep ties to Nevada, where he has resided for approximately fifteen years with his family. Mr. Adame-Reyes has limited vision, having lost an eye as a child, but is nonetheless a hardworking member of the community, working in construction and auto-mechanics. He is presently detained at Nye County Detention Center in

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Pahrump, Nevada for his immigration case, which was initiated following his arrest and detention on the basis of an ICE hold.

16.    Defendant Joseph Lombardo is the Sheriff of Clark County, a municipality and political subdivision of the State of Nevada.  Sheriff Lombardo is sued in his individual capacity and in his official capacity.  Sheriff Lombardo is the Chief Law Enforcement Officer and Chief Administrative Officer of LVMPD and is responsible for the management and control of all LVMPD jails and the custody of all inmates housed in the LVMPD jails, including CCDC.  As such, he is responsible for formulating the policies that govern the custody of all individuals held at CCDC and for the training and supervision of LVMPD officers.  Sheriff Lombardo has ultimate supervisory authority over CCDC.  In his official capacity, he is also responsible for the acts and omissions of his agents and employees at CCDC.  At all times relevant to this Complaint, Sheriff Lombardo acted or failed to act under color of state law.

17.    Sheriff Lombardo is liable in his individual supervisory capacity as well, because he had personal knowledge of, and set in motion the policy, custom, and practice of honoring ICE holds, and he personally refused to terminate this policy and practice in the training, supervision, and control of his subordinates.  Sheriff Lombardo knew or reasonably should have known that the ICE holds policy, custom, and practice were so deficient that they repudiated and deprived Mr. Adame-Reyes of his clearly established constitutional rights.  Well before Mr. Adame-Reyes was unlawfully arrested and detained, Sheriff Lombardo was personally informed and knew of both the lack of authority under Nevada law to make arrests for civil immigration violations and the unconstitutionality of effectuating arrests and detention on the basis of ICE hold requests and without probable cause, and he was further aware that ICE hold requests were being routinely granted, with numerous individuals being re-arrested and detained solely on the basis of ICE holds and well past their judicially-authorized release dates.[5]  Without these policies, which Sheriff Lombardo himself put in place and had implemented by and through his officers, the violations of

_____

[5] *See* **Exhibit E** (March 15, 2018 letter from legal advocates informing Sheriff Lombardo and LVMPD of substantial legal authority holding that ICE holds do not mandate detention and do not provide probable cause to support an arrest); **Exhibit F** (March 28, 2018 letter from Sheriff Lombardo stating that LVMPD declined to discontinue honoring ICE holds); *infra* para. 41.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Mr. Adame-Reyes's constitutional rights would not have occurred. Sheriff Lombardo is thus also liable in his individual capacity because he personally knew of these violations and failed to prevent them.

18. Defendant LVMPD is the police agency responsible for all police services within the City of Las Vegas and the unincorporated areas of Clark County, the two major municipalities and political subdivisions in the greater Las Vegas Valley metropolitan area of the State of Nevada. Defendant LVMPD's employees engaged in the acts complained of pursuant to the policies, practices, and customs of Sheriff Lombardo and the LVMPD.

19. Each of the Defendants, their employees, and agents participated personally in the unlawful conduct challenged herein and, to the extent that they did not personally participate, authorize, or acquiesce in such conduct, they nevertheless set in motion or otherwise failed to take necessary steps to prevent the acts that resulted in the unconstitutional and unlawful conduct and the harm suffered by Mr. Adame-Reyes. Each acted in concert with each other. The challenged acts caused the violation of Mr. Adame-Reyes's rights.

### FACTS & LEGAL BACKGROUND COMMON TO ALL CLAIMS FOR RELIEF

**A.    The Fourth Amendment Prohibits Arrests for Civil Disputes**

20. "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

21. Under the Fourth Amendment, "a fair and reliable determination of probable cause" must be provided "as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979).

22. If an individual is "kept in custody for a new purpose after [the individual is] entitled to release, [that individual] was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification." *Id.*

23. Probable cause to support a new arrest or seizure of a person can only exist when the facts and circumstances are sufficient to warrant a prudent person in believing that the

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

individual subject to arrest or seizure had or was committing a *criminal offense*. *See Gerstein v. Pugh*, 420 U.S. 103, 111–12; *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995).

24.    Civil disputes cannot give rise to probable cause to support an arrest or seizure that complies with the requirements of the Fourth Amendment. *See Gerstein*, 420 U.S. at 111–12; *Allen*, 73 F.3d at 237.

25.    "As a general rule, it is not a crime for a removable [noncitizen] to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012).

26.    Further, deportation and removal proceedings are "civil in nature." *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010).

27.    Thus, the lower federal courts have universally recognized that the Fourth Amendment's probable cause requirement for warrantless arrests and seizures prohibits "local law enforcement officers from arresting individuals solely based on known or suspected civil immigration violations." *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 464 (4th Cir. 2013) (collecting cases).

**B.    Background on ICE Holds**

28.    An ICE hold does not provide probable cause that a criminal infraction has been committed by the individual named in the hold request. Unlike criminal detainers or holds, an ICE hold is not accompanied by a judicial warrant or judicial determination of probable cause that a criminal infraction has been committed. Rather, it is an *administrative* request, signed by a single ICE officer or deputized local officer. Although ICE also refers to its holds as "detainers," they are not accompanied by the same procedural protections as criminal detainers and do not carry the same force of law.

29.    An ICE hold requests, but *does not require*, that a local law enforcement agency or officer – in this case, Sheriff Lombardo and LVMPD – hold an individual for up to 48 hours (excluding weekends and federal holidays) beyond the time when the individual would otherwise be released from local custody. While ICE holds request detention for 48 hours, the granting of such holds can impose significantly lengthier detention times because weekends and federal

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

holidays are not counted as being part of the 48 hours (and in some cases, local authorities have held individuals longer than the period of time specified in the hold request).

30.     An ICE hold appears on an administrative form (Form I-247A) used by ICE that advises local officials that DHS may desire to initiate *civil* immigration proceedings against an individual and/or assume custody of an individual.  A true and correct copy of Form I-247A is attached to this complaint as **Exhibit B**.

31.     An ICE hold provides *no legal authority* to detain an individual after the conclusion of a lawful custody that was based on traffic, municipal, and/or state criminal charges.

32.     In issuing an ICE hold, an ICE officer—or a local official deputized as a "287(g) officer" (*see infra* ¶¶ 31-36)—simply checks a box on the ICE hold form asserting that the officer has evidence that the individual is subject to removal from the United States.  As a primary "evidentiary" source for these holds, ICE commonly employs various databases that are notoriously unreliable and prone to both human and mechanical error.[6]  ICE has made these hold requests to Sheriff Lombardo and LVMPD on the *mere suspicion* that an individual has committed a *civil* immigration violation, which does not meet the requisite legal standard to support an arrest or detention.

33.     ICE holds are sometimes accompanied by an I-200 administrative arrest warrant. Like the ICE hold, the administrative warrant does not indicate any basis for arrest resulting from a violation of criminal law, nor is it accompanied by a judicial determination of probable cause that a crime has been committed.  Also like the ICE hold request, ICE administrative warrants are issued by a single ICE officer based on that officer's own finding that there is probable cause to believe that a person is removable.  Often, an ICE officer's finding of probable cause to believe a person is removable is based on unreliable data and biased policing tactics like racial profiling. While both the ICE hold and the administrative arrest warrant are supposed to be served upon the affected individual, this does not always happen.

---

[6] *See Gonzalez v. Immigration and Customs Enforcement*, No. 2:12-cv-09012 AB (FFMx), 2019 WL 4734579, at *10 (C.D. Cal. Sept. 27, 2019).

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

34.   Even when the individual subject to the ICE hold and administrative warrant has been timely served with the appropriate copies, neither ICE nor Sheriff Lombardo has provided an administrative procedure for challenging the issuance of the ICE hold or administrative warrant. Likewise, the Board of Immigration Appeals has ruled that it does not have jurisdiction to consider challenges to ICE holds because it has found that individuals held on ICE holds are not in federal custody.[7]   Thus, those subjected to ICE holds, like Mr. Adame-Reyes, have effectively been left without a viable remedy or due process to challenge their unlawful detention.

**C.        Lack of Legal Authority to Detain on Sole Basis of an ICE Hold**

35.   When LVMPD continues to maintain custody of a person solely on the basis of an ICE hold, this detention constitutes a new "arrest" under the Fourth Amendment of the U.S. Constitution.[8]

36.   To undertake a new arrest, including by honoring an ICE hold, LVMPD must comply with the Fourth Amendment and Section 8-8a of the Nevada Constitution and ensure that the new arrest be authorized by both federal and state law.

37.   An arrest based only on an ICE hold violates the Fourth Amendment and Nevada law because Nevada law enforcement officers have no authority to make arrests for *civil* immigration offenses, as Defendants themselves have publicly acknowledged.[9]

///

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

---

[7] *See Matter of Sanchez*, 20 I. & N. Dec. 223, 226 (BIA 1990) (vacating the immigration judge's order considering an immigration hold for lack of jurisdiction since "the respondent was in the actual physical custody of the State of Maryland"); *see also Matter of Lehder*, 15 I. & N. Dec. 159, 161 (BIA 1975) ("If [respondent] wishes to be relieved of the consequences of the [immigration] detainer, he should seek a remedy from the present custodial authorities rather than from [the federal immigration agencies]."); *Matter of Valdovinos*, 18 I. & N. Dec. 343, 345 (BIA 1982) ("claims as to the unconstitutionality of the statutes and regulations administered by this Board are outside the scope of our jurisdiction").

[8] *See, e.g.*, *Roy v. Cty. of Los Angeles*, No. CV-12-09012-AB (FFMx), 2018 WL 914773, at *23 (C.D. Cal. Feb. 7, 2018) ("[W]here a 'continued detention exceed[s] the scope of the Jail's lawful authority over the released detainee,' the detention 'constitute[s] a new arrest, and must be analyzed under the Fourth Amendment.'") (citing *Miranda–Olivares v. Clackamas Cty.*, No. 3:12–cv–02317–ST, 2014 WL 1414305, at *10 (D. Or. Apr. 11, 2014)).

[9] *See* **Exhibit A**.

38.     Nevada law provides only limited authority to Nevada law enforcement agencies to make arrests for enumerated state civil matters.[10]  Civil immigration enforcement is not one of the enumerated situations permitting an arrest for a civil matter.[11]  The Nevada Attorney General recognized this in a 1983 opinion that concluded that "Nevada peace officers should act cautiously in enforcing federal laws … and should not detain or arrest a person solely on the basis that this individual might be … deportable."[12]

39.     Federal law similarly does not afford Defendants authority to undertake an arrest based on an ICE hold.  The federal government maintains the sole power to establish and enforce immigration laws, which are codified in the Immigration and Nationality Act ("INA").[13]  As part of that scheme, Congress dramatically limited the specific circumstances in which local law enforcement may aid the federal government in immigration enforcement.[14]  Those specific circumstances do not authorize LVMPD to make arrests or detain individuals on the basis of an ICE hold.[15]

40.     Even where federal law allows for some involvement of local officers in immigration enforcement, the INA strictly limits the role such officers can play.  "Local law enforcement officers may assist in federal immigration enforcement efforts under 8 U.S.C. § 1357(g), which authorizes the Attorney General to enter into agreements with local law enforcement agencies that allow specific officers to perform [limited] functions of federal

---

[10] *See* NEV. REV. STAT. § 31.470 ("No person shall be arrested in a civil action except as prescribed by this chapter.").

[11] *See* NEV. REV. STAT. § 31.480 (specifying five instances in which a defendant may be arrested in a civil action, none of which include arrest for civil immigration violations or pursuant to an ICE hold).

[12] *See* Op. Att'y Gen. Opinion No. 83-16 (Nov. 23, 1983), 1983 WL 171453; *see also Dinitz v. Christensen*, 577 P.2d 873, 875 (Nev. 1978) ("Law-enforcement officers may make arrests *only* on 'probable cause,' a Fourth and Fourteenth Amendment standard applicable to states, as well as the federal government.") (emphasis added).

[13] *See* 8 U.S.C. §§ 1101, *et seq.*

[14] *See Arizona v. United States*, 567 U.S. 387, 408–09 (2012).

[15] *Accord Gonzalez*, 2019 WL 4734579, at *17 ("[E]ven where federal law permits state or local officers to make civil immigration arrests, the authority for such arrests must come from state law.") (quoting 8 U.S.C. §§ 1357(g)(1), 1252c(a)).

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

immigration officers."[16]  Named for the section of the INA that authorizes them, such agreements are referred to as "287(g) Agreements."[17]

41.    Participation in the 287(g) program does not give state or local law enforcement entities authority to make arrests for civil immigration violations, nor does it grant them authority to detain individuals beyond what is allowed under state law.

42.    On or about June 28, 2016, Sheriff Lombardo and ICE executed a 287(g) Agreement, allowing participating LVMPD officers to perform specified immigration functions.[18] A true and correct copy of the Clark County MOA is attached to this complaint as **Exhibit C**.  The Clark County MOA, principally, gave specified LVMPD officers ("287(g) officers") the authority to issue the same administrative forms that ICE issues.

43.    Specifically, and as pertinent here, the Clark County MOA permitted the deputized 287(g) officers to serve administrative arrest warrants for immigration violations.  The Clark County MOA also allowed deputized 287(g) officers to interrogate any person detained in the participating LVMPD detention center whom the officer believed to be an undocumented immigrant about their right to be in the United States.  Additionally, the Clark County MOA authorized deputized 287(g) officers to issue ICE hold requests on individuals believed to be removable.  *See* **Exhibit C**.

44.    Notably, the Clark County MOA has not provided any authority to make arrests for civil immigration violations, nor has it provided any authority to *grant* an ICE hold request and detain an individual on that sole basis and without probable cause.  The Clark County MOA has specifically provided that the authority it does grant may be used only "to the extent consistent

---

[16] *Macareno v. Thomas*, 378 F. Supp. 3d 933, 943 (W.D. Wash. 2019).

[17] *See* Dep't of Homeland Sec. Immigration and Customs Enforcement, "Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act," *available at* https://www.ice.gov/287g. The 287(g) program is an initiative allowing "a state or local law enforcement entity to enter into a partnership with ICE, under a joint Memorandum of Agreement (MOA), in order to receive delegated authority for immigration enforcement within their jurisdictions." *Id.*

[18] *See* U.S. Immigration and Custom Enforcement, Memorandum of Agreement, at 17 (June 28, 2016), *available at* https://www.ice.gov/doclib/287gMOA/r_287glasvegaspd.pdf ("Clark County MOA").

with State and local law." **Exhibit C**.

45.     As discussed above, Nevada law enforcement officers have no authority to arrest or detain individuals for civil immigration violations.  Nothing in the Clark County MOA changed this fact.  In fact, the Clark County MOA is not currently in effect, as of October 23, 2019.  *See* **Exhibit A**.

**D.          Defendants' ICE Holds Policy and Requests by the Community for Policy Change and Accountability**

46.     For approximately two and a half years, if not longer, Sheriff Lombardo and LVMPD engaged in a policy, custom, and practice of granting ICE hold requests, detaining Mr. Adame-Reyes and others like him past the time when they would otherwise have been released— *i.e.*, when the state law basis or other legal authority for the individuals' detention no longer existed.  On information and belief, Defendants detained hundreds of individuals, solely on the basis of ICE holds and past the point when they would otherwise have been released, in the months preceding the arrest and detention of Mr. Adame-Reyes and thereafter.   In one week alone, Defendants reportedly detained 51 individuals on the basis of an ICE hold.[19]

47.     Sheriff Lombardo has long been well aware that numerous state and federal courts have found law enforcement agencies liable for Fourth Amendment violations where they have held individuals pursuant to ICE hold requests.  On December 16, 2013, the National Immigration Law Center ("NILC") wrote to Sheriff Lombardo's immediate predecessor, Sheriff Douglas Gillespie ("Sheriff Gillespie"), informing him that the then-existing policy of refusing to allow pretrial detainees with ICE holds to post bail violated state and federal law.  A true and correct copy of this letter is attached as **Exhibit D**.

48.     In July 2014, Sheriff Gillespie and the LVMPD stopped honoring ICE holds.  This decision followed court rulings that ICE holds had failed to provide a constitutional basis for the

**HOLLAND & HART LLP**
9555 **HILLWOOD DRIVE, 2ND FLOOR**
**LAS VEGAS, NV 89134**

---

[19] *See* Megan Messerly, "As Controversial Legislation Stalls, Immigration Debate Looms Large Over Nevada*"*, NEV. INDEP. (Apr. 2, 2017), *available at* https://thenevadaindependent.com/article/controversial-legislation-stalls-immigration-debate-looms-large-nevada (quoting LVMPD Director Chuck Callaway as confirming that at least 51 people were turned over from CCDC custody to ICE custody on the basis of an ICE hold in a single week, between January 28 and February 3, 2017).

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

arrest and continued detention of individuals in local authorities' custody or for the refusal of bail for such individuals.[20]

49.     Despite his knowledge that the ICE holds violated clearly established constitutional rights, in or around early 2017, Sheriff Lombardo resumed LVMPD's prior practice of honoring ICE holds.

50.     On March 15, 2018, NILC and partnering advocates wrote to Sheriff Lombardo and LVMPD, explaining that their practices were unlawful, pointing to substantial legal authority showing the unconstitutionality of Defendants' ICE holds policy,[21] and requesting that the Sheriff immediately cease the policy and practice of effectuating arrests without probable cause and imposing detention on the basis of ICE holds.  *See* **Exhibit E**.

51.     On March 28, 2018, Sheriff Lombardo acknowledged receipt of the March 15, 2018 letter and rejected the request, stating that "LVMPD declines to discontinue honoring ICE detainers," thereby deliberately failing to act to prevent future constitutional violations, including those visited upon Mr. Adame-Reyes.  A true and correct copy of Defendants' response letter is attached as **Exhibit F**.  Undeterred by this rejection, advocates continued to push for a policy change and an end to Defendants' policy, custom, and practice of honoring ICE holds.

52.     In October 2018, the Clark County District Court and Las Vegas Township Justice Court each issued a decision rejecting an earlier administrative order that directed court clerks to refuse to accept offers of bail from individuals who were being detained on ICE holds.  The October 2018 decisions ordered the county clerk, the Las Vegas Justice Court clerk, and CCDC

---

[20] *See, e.g.*, *Miranda-Olivares v. Clackamas County*, No. 3:12-cv-02317-ST, 2014 WL 1414305, at \*10-\*11 (D. Or., Apr. 11, 2014); *Morales v. Chadbourne*, 996 F. Supp. 2d 19 (D.R.I. Feb. 12, 2014).

[21] *See, e.g.*, *Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1258 (E.D. Wash. 2017) ("Courts around the country have held that local law enforcement officials violate the Fourth Amendment when they temporarily detain individuals for immigration violations without probable cause."); *Creedle v. Miami-Dade Cty.*, 349 F. Supp. 3d 1276, 1304 (S.D. Fla. 2018) ("Numerous courts have determined that when local law enforcement agencies hold someone pursuant to a detainer—and without separate probable cause that the person has committed a crime—such detention gives rise to a Fourth Amendment claim"); *Roy v. County of Los Angeles*, No. 2:12-cv-09012-AB, 2018 WL 914773, at \*23 (C.D. Cal., Feb. 7, 2018) (holding that local officers who—on the sole basis of ICE holds—were "detaining individuals beyond their date for release[,] violated the individuals' Fourth Amendment rights"); *Abriq v. Hall*, 295 F.Supp.3d 874, 881-82 (M.D. Tenn. 2018) (same).

officers to accept bail or cash bonds from all detained persons without regard for an individual's immigration status. True and correct copies of the Clark County District Court and Las Vegas Township Justice Court orders are attached as **Exhibit G** and **Exhibit H**, respectively.

53. Despite the October 2018 decisions to make cash bail and pretrial release accessible for all, on information and belief, many noncitizen individuals continued to be detained at CCDC if an ICE hold was placed on them, rendering the technical availability of posting bail meaningless. As a result of this reality, community advocates continued to seek a direct end to Defendants' ICE holds policy and practice and accountability for the harms resulting from that policy and practice.

54. Defendants held to their policy and practice for another full year, before announcing on October 23, 2019, that they would cease granting ICE hold requests for the time being, while exploring other means of collaborating with federal immigration authorities. **Exhibit A**. This decision followed a September 27, 2019 ruling from the Central District of California, permanently enjoining ICE from issuing detainers to state and local law enforcement agencies in states where there is no explicit state statute authorizing civil immigration arrests on detainers.[22] Defendants' press statement noted the Central District of California's ruling and acknowledged that Nevada lacks a statute authorizing arrests for civil immigration violations, but omitted mention of other legal authority that had previously been brought to their attention. **Exhibit A**.

55. Defendants' October 23rd press statement and asserted policy change do not redress the harm that countless individuals, including Mr. Adame-Reyes, suffered at the hands of Defendants and as a result of their longstanding unlawful ICE holds policy, custom, and practice. Defendants' October 23rd press statement is an admission that Defendants lacked legal authority to honor the ICE hold placed on Mr. Adame-Reyes, detain him beyond his ordered release date, and subject him to significant harms.

///

///

///

_____

[22] *Gonzalez*, 2019 WL 4734579, at *11.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## MR. ADAME-REYES'S DETENTION

**A.        The First Unconstitutional Detention of Mr. Adame-Reyes**

56.      The first arrest that led to Defendants detaining Mr. Adame-Reyes on an ICE hold had many of the markings of the pretextual arrests that many others have suffered in Clark County and other jurisdictions that involve local law enforcement agencies in doing the work of federal immigration officers.

57.      On August 21, 2018, Mr. Adame-Reyes was walking to a convenience store. Because it was a hot day, he stopped to sit and rest by a utility pole while landscapers cut grass nearby. Shortly thereafter, a LVMPD officer approached him and asked why he had stopped there. Mr. Adame-Reyes does not speak English, and the officer did not speak Spanish, but Mr. Adame-Reyes did his best to understand the officer.

58.      The officer told Mr. Adame-Reyes that he was being placed under arrest. Mr. Adame-Reyes asked the officer why he was being arrested for simply sitting on a sidewalk. The officer responded that Mr. Adame-Reyes was being arrested for disorderly conduct. According to the officer, the nearby landscapers told LVMPD that Mr. Adame-Reyes had been obstructing their pathway. But at no point did the landscapers suggest to Mr. Adame-Reyes that they thought he was in their way.

59.      Shortly thereafter, a Spanish-speaking officer arrived. Mr. Adame-Reyes heard the Spanish-speaking officer tell the English-speaking officer to let Mr. Adame-Reyes go, but the English-speaking officer nonetheless proceeded to put his hands on Mr. Adame-Reyes. Not fully understanding what was happening, Mr. Adame-Reyes pulled his arm away. The officer then changed course and arrested Mr. Adame-Reyes for resisting and obstructing an officer. At the time of arrest, Mr. Adame-Reyes was not advised of his *Miranda* rights.

60.      Mr. Adame-Reyes was taken to CCDC. Upon arrival, a CCDC official told him he would be released. According to the Las Vegas Justice Court Register of Actions, Mr. Adame-Reyes was ordered "CCDC O.R.-Jail Release" on August 21, 2018, the same day he was arrested. This means he should have been released on his "own recognizance," without the requirement to pay any cash bail.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

17

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

61.     Nonetheless, before Mr. Adame-Reyes could leave the facility, he was stopped by a "287(g)" officer who demanded to know his immigration status.  Mr. Adame-Reyes was not informed he could decline to respond nor did he feel it was an option to do so, and accordingly, Mr. Adame-Reyes followed the officer's orders and answered his questions. The 287(g) officer asked him to sign a voluntary deportation form, which he declined to do.  The 287(g) officer then took the form ordering "CCDC O.R.-Jail Release" from Mr. Adame-Reyes, which indicated that he should be released, and instead jailed him overnight.

62.     Meanwhile, this same 287(g) officer signed an ICE administrative arrest warrant (Form I-200) but failed to assert any probable cause to believe that Mr. Adame-Reyes had committed a criminal offense, which would have been the only legal support for the new arrest that was being effectuated.

63.     The next day, August 22, 2018, CCDC officials transported Mr. Adame-Reyes to a second location, and he received a form indicating he would be transferred to Henderson Detention Center ("HDC"), a city jail that doubles as an immigration detention center.  Mr. Adame-Reyes did not believe he could challenge the transfer to HDC.

64.     On September 4, 2018, the Clark County District Attorney dismissed the charges against Mr. Adame-Reyes in the Las Vegas Justice Court.  On September 20, 2018, the Justice Court formally closed the criminal case based on the prosecutor's decision not to proceed with the charges.

65.     Mr. Adame-Reyes nonetheless remained detained at HDC until December 26, 2018, when his family paid bond to immigration authorities in the amount of $6,500, as set by an immigration judge, and he was released from ICE custody.

**B.       The Second Unconstitutional Detention of Mr. Adame-Reyes**

66.     On August 17, 2019, while waiting on the street for a friend who had gone into a nearby store, Mr. Adame-Reyes was again arrested and taken to CCDC.  The next day, on August 18, 2019, Mr. Adame-Reyes was taken to a criminal case hearing, during which the prosecutor declined to pursue charges.  Following his hearing, Mr. Adame-Reyes was taken back to CCDC, where he was detained for approximately 17 days.

67. On September 3, 2019, Mr. Adame-Reyes was taken to another criminal case hearing on an outstanding misdemeanor trespass charge, which was also dismissed that day. Following his hearing, Mr. Adame-Reyes was taken back to CCDC. On information and belief, the decision to continue detaining Mr. Adame-Reyes despite his having been ordered released was made on the basis that it was the Defendants' policy, custom, and practice to detain individuals beyond their judicially-authorized release date and time in order to transfer them into ICE custody.

68. The next day, on September 4, 2019, CCDC officials told Mr. Adame-Reyes that they could not release him because ICE wanted to speak with him. Within the hour, and at CCDC facilities, Mr. Adame-Reyes was interviewed by a 287(g) officer who asked him about his immigration status. Mr. Adame-Reyes was not informed he could decline to answer questions, nor did he feel it was an option to do so, and he accordingly responded to the officer's questions. The authorities then transferred Mr. Adame-Reyes to Nye County Detention Center ("NCDC"), a county jail that doubles as an immigration detention center. Mr. Adame-Reyes did not believe he could challenge the transfer to NCDC.

69. Since September 4, 2019, Mr. Adame-Reyes has remained detained at NCDC under ICE custody.

///

///

///

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

19

## FIRST CLAIM FOR RELIEF

## UNLAWFUL SEIZURE

### 42 U.S.C. § 1983 – Fourth Amendment and Fourteenth Amendment

*Against All Defendants*

70.     Mr. Adame-Reyes realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

71.     Through the acts alleged herein, Defendants and their employees and agents violated Mr. Adame-Reyes's Fourth Amendment rights to be free from unreasonable seizure.

72.     Defendants continued to detain Mr. Adame-Reyes after his release date and the expiration of any and all state law basis to detain him.  On information and belief, the decision to detain Mr. Adame-Reyes was made on the sole basis that it was Defendants' policy, custom, and practice to detain individuals named by ICE in a Form I-247A and/or Form I-200.  Defendants did so despite having no legal authority under either federal or state law to continue to hold Mr. Adame-Reyes in custody after his judicially authorized release date.

73.     Because of this and the fact that ICE holds are not judicial warrants issued upon probable cause that a crime has been committed, Defendants' ICE holds policy and detention of Mr. Adame-Reyes violated his Fourth Amendment right to be free from unreasonable seizures without a warrant or probable cause.

74.     These unlawful actions were done with the specific intent to deprive Mr. Adame-Reyes of his constitutional rights.

75.     Mr. Adame-Reyes is informed and believes that the acts of Defendants and their employees and agents were intentional, done under color of state law, and pursuant to a policy, custom, or practice of Sheriff Lombardo and the LVMPD.  As a direct and proximate consequence of these unlawful acts, Mr. Adame-Reyes has suffered harm and is entitled to compensatory damages.

///

///

///

20

76.     Additionally, Defendant Lombardo is personally liable in his individual capacity because his wrongful conduct—i.e., knowingly and intentionally implementing the ICE hold policies that violated Mr. Adame-Reyes's clearly established constitutional rights; explicitly rejecting requests to discontinue Defendants' policies of honoring ICE holds and detaining individuals past their judicially-authorized release dates; and failing to prevent clearly established constitutional violations from occurring to detainees under his control, including Mr. Adame-Reyes—evinced a deliberate indifference to Mr. Adame-Reyes's constitutional rights and was the "moving force" behind the violations.  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

77.     Defendant Lombardo is not immune from his actions, or inactions, because his conduct violated clearly established rights, starting from Mr. Adame-Reyes's unlawful arrest. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (a personal immunity defense applies "insofar as [the] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").  Under Nevada law, such immunity does not apply where discretionary conduct violates a legal mandate.  *Koiro v. Las Vegas Metro. Police Dep't*, 69 F. Supp. 3d 1061, 1074 (D. Nev. 2014).

78.     As a result of Defendants' conduct, Mr. Adame-Reyes has sustained, and will continue to sustain, without limitation, emotional and economic injuries in the form of loss of freedom, lost income, emotional distress, and loss of the companionship of his family.

## SECOND CLAIM FOR RELIEF

## PROCEDURAL DUE PROCESS

### Fourteenth Amendment

*Against All Defendants*

79.     Mr. Adame-Reyes realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

80.     Under the Fourteenth Amendment to the U.S. Constitution, no person may be deprived of life, liberty, or property without due process of law.

///

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

21

81. Without any basis in federal or state law, Defendants denied Mr. Adame-Reyes his liberty and freedom due solely to the existence of an ICE hold and without probable cause. This deprived Mr. Adame-Reyes of his liberty without the due process of law.

82. Mr. Adame-Reyes is informed and believes that the acts of Defendants and their employees and agents were intentional, done under color of state law, and pursuant to a policy, custom, or practice of Sheriff Lombardo and the LVMPD.

83. As a result of Defendants' conduct, Mr. Adame-Reyes has sustained, and will continue to sustain, without limitation, emotional and economic injuries in the form of loss of freedom, lost income, emotional distress, and loss of the companionship of his family.

**THIRD CLAIM FOR RELIEF**

**FALSE IMPRISONMENT**

*Against All Defendants*

84. Mr. Adame-Reyes realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

85. Defendants intentionally imprisoned Mr. Adame-Reyes by force.

86. Defendants deprived Mr. Adame-Reyes of his liberty without legal cause of justification and in violation of Nevada law.

87. Defendants non-consensually and intentionally confined Mr. Adame-Reyes against his will without lawful privilege.

88. As a result of Defendants' conduct, Mr. Adame-Reyes has sustained, and will continue to sustain, without limitation, emotional and economic injuries in the form of loss of freedom, lost income, emotional distress, and loss of the companionship of his family.

**FOURTH CLAIM FOR RELIEF**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

*Against All Defendants*

89. Mr. Adame-Reyes realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

///

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

90.     Defendants intentionally engaged in extreme and outrageous conduct by detaining Mr. Adame-Reyes beyond the time he was entitled to be released for the sole purpose of ensuring ICE would be able to detain and institute removal proceedings against him.

91.     Defendants intended to cause Mr. Adame-Reyes emotional distress by way of keeping him detained in jail beyond his judicially authorized release date and continuing to deprive him of his freedom and family.

92.     As a proximate result of Defendants' conduct, Mr. Adame-Reyes has suffered severe and extreme emotional distress resulting from the deprivation of his freedom, his loss of ability to support himself financially, and the loss of the companionship of his family.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DAVID ADAME-REYES request entry of judgment in favor of himself and against Defendants JOSEPH LOMBARDO, in his Individual Capacity and in his Official Capacity as Sheriff of the Las Vegas Metropolitan Police Department and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT, as follows:

A.     For declaratory relief that Defendants' policy, custom, and practice of honoring ICE holds and imposing arrest and detention based on such holds and without the necessary probable cause is unlawful under state and federal law;

B.     For compensatory damages, in the amount to be proven at trial;

C.     For interest;

D.     For reasonable costs of this suit and attorneys' fees; and

E.     For such further other relief as the Court may deem just, proper, and appropriate.

///

///

///

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

23

**HOLLAND & HART LLP**
**9555 HILLWOOD DRIVE, 2ND FLOOR**
**LAS VEGAS, NV 89134**

## JURY DEMAND

A.    Plaintiff Mr. Adame-Reyes requests a trial by jury.

DATED this 6th day of February, 2020.

HOLLAND & HART LLP


*/s/ J. Stephen Peek*
J. Stephen Peek
Ryan A. Semerad
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

Sarah Kim Pak (*pro hac vice* pending)
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd, Suite 108 – 62
Los Angeles, CA 90010

Rene Kathawala (*pro hac vice* pending)
Deena Dulgerian (*pro hac vice* pending)
Carolina Garcia (*pro hac vice* pending)
Amanda Maya (*pro hac vice* pending)
ORRICK, HERRINGTON, & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California 94025

*Attorneys for Plaintiff David Adame-Reyes*

14168843_v1